Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1124 | DATE | JUL 19 2000 |
| CASE TITLE | United States of America vs. #080918039 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion to Allow the Filing of Claims Instanter, Vacate Default Decree of Forfeiture and/or Return Property

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the motion to allow the filing of claims instanter, vacate default decree of forfeiture and/or return property is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ✗ No notices required, advised in open court.— copies given | | 2 number of notices | Document Number |
| No notices required. | | | |
| Notices mailed by judge's staff. | | date docketed | 19 |
| Notified counsel by telephone. | | | |
| Docketing to mail notices. | | docketing deputy initials | |
| Mail AO 450 form. | | | |
| Copy to judge/magistrate judge. | | date mailed notice | |
| MEA (lc) courtroom deputy's initials | Date/time received in central Clerk's Office | 7-19-00 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 1124 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| FUNDS IN THE AMOUNT OF $81,300.53, ) | |
| TRACEABLE TO CERTIFICATE OF ) | |
| DEPOSIT NUMBER 080918039, ) | |
| ) | |
| Defendant. ) | |

JUL 20 2000

## MEMORANDUM OPINION AND ORDER

Before this court is claimants Ruben Gutierrez and Raphael Gutierrez's motion to allow the filing of claims instanter, vacate default decree of forfeiture and/or return property. For the following reasons, the motion is DENIED.

### Background

This motion is in response to a default decree in a forfeiture action brought by the United States of America ("the Government") pursuant to 21 U.S.C. § 881(a)(6) against defendant funds of $81,300.53. Those funds were traced to a Certificate of Deposit ("CD") numbered 080918039 that was in the name of Ruben Gutierrez ("Gutierrez"), and also presumably in the name of Gutierrez's son, Raphael Gutierrez. (Gutierrez's Ex. 3). These funds were seized on March 1, 1999 by the Government, for the Government alleged there was probable cause to believe that these defendant funds constituted monies intended to be furnished in exchange for a controlled substance or intended to be used to facilitate a narcotics transaction, in violation of 21 U.S.C. § 841(a)(1) et

1

seq. (Govt.'s Complaint ¶ 3).

The events that led to the seizure of the defendant funds are alleged as follows: On November 16, 1998, Gutierrez telephoned undercover Sheriff's Deputy Raul Sanchez ("Sanchez") and stated that he had two CD's which were about to mature and were valued at $100,000 a piece. Gutierrez indicated he was interested in a cocaine transaction and would send Sanchez photocopies of the CD's for his inspection. (Govt.'s Complaint ¶ 8). On December 4, 1998, Gutierrez sent photocopies of two Bank of Lockport CD's to Sanchez, numbered 080918039 and 080918040, each worth $100,000. (Govt.'s Complaint ¶ 9). Gutierrez agreed to liquidate the CD's and obtain two cashier's checks of $100,000, made out to Sanchez. (Id.).

In January of 1999, Gutierrez did liquidate the two CD's; however, while the funds from the CD numbered 080918040 were used to fund a cashier's check made out to Sanchez, the funds from CD numbered 080918039 were used to fund a cashier's check made out to Gutierrez himself. (Govt.'s Complaint ¶¶ 14, 16).

On February 15, 1999, three individuals were arrested for attempting to purchase ten kilograms of cocaine from Sanchez. When arrested, the cashier's check from Gutierrez to Sanchez for $100,000 was seized. (Govt.'s Complaint ¶ 14). The cashier's check made out to Gutierrez had been deposited into a savings account at the First National Bank of Lockport. Subsequent withdrawals left a balance of $81,300.53. (Govt.'s Complaint ¶ 16). Gutierrez agreed not to contest the subsequent forfeiture of the $100,000 that funded the cashier check to Sanchez. (Govt.'s Complaint ¶ 15).

On April 12, 1999, the Federal Bureau of Investigation ("FBI") sent Gutierrez a notice of intent to seek forfeiture of the $81,300.53. The notice stated that Gutierrez had to filed a claim of

ownership by May 24, 1999. (Gutierrez's Ex. 2). On May 21, 1999, Gutierrez contacted an attorney named David Peilet ("Peilet") and Peilet served the FBI with a timely claim and application. (Gutierrez's Ex. 4).

On February 25, 2000, the Government filed a complaint seeking forfeiture of the $81,300.53. (Gutierrez's Ex. 1). On March 13, 2000, Peilet and the First National Bank of Lockport were both served with the verified complaint. On March 28, 2000, Gutierrez and his son Raphael were served. (Govt.'s Ex. A). Gutierrez contacted Peilet on March 27, 2000, the day before he was served. Peilet prepared an affidavit and a claim for Gutierrez in response to the complaint. Gutierrez believed that Peilet would file the claim, but Peilet believed that Gutierrez would file the claim pro se. According to Gutierrez, because of this misunderstanding, the claim and affidavit were never filed. (Gutierrez's Ex. 3, 5, 6).

Two status hearings came and went with no appearance by either Gutierrez or Peilet. Since no timely claims had been filed, the Government filed a motion for entry of default decree of forfeiture on May 16, 2000. Gutierrez, his son Raphael Gutierrez, Peilet, and the First National Bank of Lockport were all served with the motion. (Gutierrez's Ex. 7). This court entered a default decree on May 22, 2000. Gutierrez was advised of the default by letter from the U.S. Attorney's office on May 23, 2000. The next day, May 24, 2000, Gutierrez contacted and retained a new attorney, Mark Martin. Gutierrez filed the present motion on May 30, 2000.

**Analysis**

Gutierrez makes two main arguments in this motion. First, the court should use its discretion under Rule C(6) of the Supplemental Rules Governing Certain Admiralty Claims to allow the filing of Gutierrez's claims instanter. Second, pursuant to Federal Rule of Civil Procedure 60(b), the

3

default decree of forfeiture should be set aside. Each of these arguments will be taken in turn.

**I. Filing of Claims Instanter**

Under Rule C(6), a court has discretion to permit an extension of time to file a claim. U.S. v. Currency in the Amount of $103,387.27, 863 F.2d 555, 561 (7th Cir. 1988) (citing U.S. v. 1982 Yukon Delta Houseboat, 774 F.2d 1432 (9th Cir. 1985) and U.S. v. One (1) 1979 Mercedes 450 SE, 651 F.Supp. 351 (S.D.Fla. 1987). The Seventh Circuit has outlined several different factors for district courts to consider in deciding whether to grant an extension of time to file a claim: (1) whether the claimant has advised the court and government of its interest in the subject property; (2) whether the government would be prejudiced by allowing the late filing; and (3) whether there has been a good-faith effort to comply initially with Rule C(6)'s requirements. $103,387.27, 863 F.2d at 561. In particular, the Seventh Circuit has stated:

> Where the claimants have made a good-faith effort to file a claim and where the government can show absolutely no prejudice by the granting of an extension of time, we think it an abuse of discretion to deny an extension of time to amend a claim of ownership, absent any countervailing factors.
> Id. at 563.

Gutierrez argues that he has made a good faith effort to file a claim, demonstrated by the claim and affidavit he filed with the FBI in 1999 and his intent to file a claim and affidavit through his misunderstanding with Peilet. (Gutierrez's Motion, pp. 6-7). The weakness with Gutierrez's argument is the cases he cites that have allowed for the extension of time address situations where a claim has been filed, but the claim was not verified. For example, in $103,387.27, the claimants had filed a claim but they failed to properly verify the claim. The claimants had also filed an appearance with the court and had contacted the U.S. Attorney's Office, giving the government and the court notice. 863 F.2d at 562. In Yukon Delta Houseboat, when the Ninth Circuit allowed the

4

extension of time, the claimants had already filed an answer, the case had already completed a year of discovery, and the trial date was set before the government made the verification of the claim an issue. 774 F.2d at 1436-37. Gutierrez argues that his claim with the FBI in 1999 is notice of his claim. However, an administrative claim is legally insufficient to meet the notice requirement. One (1) Mercedes, 651 F.Supp. at 354 (citing U.S. v. Currency in the amount of $2857.00, 754 F.2d 208 (7th Cir. 1985). Therefore, since Gutierrez did not adequately advise the court or the government of his interest in the funds and he did not make a good faith effort to follow Rule C(6), an extension to file will not be granted.

## II. Set Aside Default Decree of Forfeiture

Even if this court allowed Gutierrez to file his claims out of time, Gutierrez does not succeed on his Rule 60(b) argument to set aside the default decree. Federal Rule of Civil Procedure 60(b) states in part: "... the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect..." However, in order to be relieved of a default judgment, the moving party must show "something more compelling than ordinary lapses of diligence or simple neglect..." Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994). In order to vacate a default judgment, the moving party must establish (1) good cause for vacating the default; (2) quick action to correct the default; and (3) the existence to a meritorious defense to the original complaint. United States v. DiMucci, 879 F.2d 1488, 1495 (7th Cir. 1989). The court will focus on the first factor, good cause, and the third factor, the existence of a meritorious defense.

Gutierrez argues that a misunderstanding between himself and Peilet led him to believe that his claim and affidavit had been filed, and therefore this mistake is good cause for vacating the

5

default decree. However, Gutierrez does not present any evidence that he had any contact with Peilet after the supposed filing of the claim and affidavit in March of 2000. Gutierrez was served with the motion for default decree on May 16, 2000, but did not act to respond or retain an attorney until a default decree was entered. It is the responsibility of both the attorney and the client to stay in contact with each other and lack of communication is not an excuse. Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42, 45 (7th Cir. 1993). A lack of communication between attorney and client that results in a late filing is not "good cause" under Rule 60(b). U.S. v. Indoor Cultivation Equipment, 55 F.3d 1311, 1318 (7th Cir. 1995).

As to the third factor, Gutierrez's defense to the forfeiture action is the Government failed to establish probable cause in the complaint. In particular, Gutierrez argues the Government failed to show that the $81,300.53 was intended to be furnished in exchange for a controlled substance or used to facilitate a narcotics transaction. (Gutierrez's Motion, p. 10). The probable cause threshold in a drug forfeiture case is the same as the probable cause threshold in any other case. U.S. v. $506,231 in U.S. Currency, 125 F.3d 442, 451 (7th Cir. 1997) (citing U.S. v. Edwards, 885 F.2d 377, 389-90 (7th Cir. 1989)). To establish probable cause, the Government must demonstrate a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." U.S v $87,118.00 in U.S. Currency, 95 F.3d 511, 518 (7th Cir. 1996). Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity. U.S. v. Certain Real Property Commonly Know as 6250 Ledge Rd., 943 F.2d 721, 725 (7th Cir. 1991) (citing Edwards, 885 F.2d at 389-90). Probable cause for the forfeiture exists if the government demonstrates a nexus between the seized property and illegal narcotics activity. $87,118.00, 95 F.3d at 518. Once the government meets its burden of establishing the

6

existence of probable cause, "'the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture' by demonstrating that the property was not used in connection with drug activities." $506,231, 125 F.3d at 451 (quoting United States v. All Assets and Equipment of West Side Building Corp., 58 F.3d 1181, 1189 (7th Cir. 1995)).

The Government has shown the necessary nexus between the $81,300.53 and the narcotics activity. Gutierrez presented photocopies of the CD numbered 080918039 to Sanchez to negotiate the drug transaction. Gutierrez agreed to obtain two cashier's checks from the two CD's in order to fund the drug transaction. Gutierrez's offering of the proceeds of the two CD's in order to set up the illegal transaction presents the necessary intent. It does not matter that the illegal transaction with the proceeds from CD numbered 080918039 was not consummated, for 21 U.S.C. § 881(a)(6) allows forfeiture of monies "intended to be furnished" in exchange for narcotics. Therefore, since the Government has established probable cause, and Gutierrez does not have a meritorious defense, Gutierrez has not established the factors necessary for a Rule 60(b) set aside of a default judgment.[1]

---

[1] Gutierrez also makes the argument that the defendant funds cannot be forfeited because Raphael Gutierrez, Gutierrez's son, is a minor who was not represented in the action. However, Raphael Gutierrez was represented in the action, for Gutierrez admits in his affidavit that he represents his son's interests. (Gutierrez's Ex. 3). Also, while Gutierrez states in his affidavit that CD numbered 080918039 was in Raphael's name, the savings account Gutierrez opened with the proceeds from that CD is only in Gutierrez's name.

## Conclusion

For the foregoing reasons, claimants Ruben Gutierrez and Raphael Gutierrez's motion to allow the filing of claims instanter, vacate default decree of forfeiture and/or return propert is DENIED.

Enter:

_____
David H. Coar
United States District Judge

Dated: **JUL 19 2000**